# 13-3083-cv

## United States Court of Appeals

*for the*

## Second Circuit

---

BEN GARY TREISTMAN and as a Parent
and Next Friend for AT as a coplaintiff A Minor,

*Plaintiff-Appellant,*

A.T., a minor,

*Plaintiff,*

— v. —

VALERIE LYN WACKS, ESQ., personal and official capacity, LAWRENCE
SHELTON, personal and official capacity, AMY GREENE, personal and official
capacity, KELLY WHITTAKER, personal and official capacity, ELISABETH
KRISJANIS, ESQ., personal and official capacity, JILLIAN JACKSON, ESQ.,

*(For Continuation of Caption See Inside Cover)*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

## BRIEF FOR DEFENDANTS-CROSS-CLAIMANTS-APPELLEES (OTHER THAN LAWRENCE R. SHELTON AND VALERIE LYN WACKS)

---

ERIC M. KURTZ
COOK, NETTER, CLOONAN, KURTZ
& MURPHY P.C.
*Attorneys for Defendants-Cross-
Claimants-Appellees*
85 Main Street
P.O. Box 3939
Kingston, New York 12402
(845) 331-0702

personal and official capacity, BARBARA SORKIN, personal and official capacity, DENISE WOLTMAN, personal and official capacity, CHARLENE BOSWELL, personal and official capacity, MARY ELLEN SCHNEIDER, personal and official capacity, JOSEPH BENNETT, personal and official capacity, ULSTER COUNTY MUNICIPALITY, via its agencies Ulster County Child Protective Services & Mental Health Dept.,

*Defendants-Cross-Claimants-Appellees,*

OTHER UNKNOWN NAMED PERSONS,

*Defendant.*

## TABLE OF CONTENTS

Page

Table of Authorities. . . . . . . . . . . . . . . . .   2

Preliminary Statement. . . . . . . . . . . . . . . .   3

Questions Presented. . . . . . . . . . . . . . . . .   5

Statement of the case. . . . . . . . . . . . . . . . 6

Argument:

POINT I - THE LOWER COURT DID NOT ABUSE ITS DISCRETION IN
          DENYING PLAINTIFF PRO SE, TREISTMAN'S, APPLICATION FOR
          A PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING
          ORDER. . . . . . . . . . . . . . . . . . . . 10

POINT II - THE LOWER COURT CORRECTLY DISMISSED A.T. AS A
           PLAINTIFF IN THE CASE BASED UPON  BOTH THE REPORT OF
           THE GUARDIAN AD LITEM AND THAT TREISTMAN DOES NOT
           HAVE STANDING TO BRING A CLAIM ON BEHALF OF HIS MINOR
           DAUGHTER. . . . . . . . . . . . . . . . . . 23

POINT III - THE PLAINTIFF-APPELLANT, TREISTMAN'S, BRIEF ON
            APPEAL IS REPLETE WITH MULTIPLE FACTUAL ALLEGATIONS
            THAT ARE NEITHER CONTAINED IN THE RECORD ON APPEAL
            NOR WERE PRESENTED TO THE LOWER COURT FOR REVIEW AND
            SHOULD BE DISREGARDED. . . . . . . . . . . 27

CONCLUSION. . . . . . . . . . . . . . . . . . . . . 28

**TABLE OF AUTHORITIES**

<u>Cases</u>

<u>Cheung v. Youth Orchestra Foundation of Buffalo, Inc.</u>, 906 F.2d 59 (2d Cir. 1990). . . . . . . . . . . . . . . . (8, 23, 24)

<u>Nitke v. Ashcroft, 253 F. Supp. 2d 587</u>, 610 (S.D.N.Y. 2003).(10)

<u>Zervos v. Verizon New York, Inc.</u>, 252 F.3d 163, 172 (2d Cir. 2001). . . . . . . . . . . . . . . . . . .(10, 11, 12, 19, 22)

<u>Dunkin Donuts Inc. v. National Donut Restaurants of New York, Inc.</u>, 291 F.Supp. 2d 149, 151 (E.D.N.Y. 2003). . . (11, 12, 20)

<u>Hohe v. Casey</u>, 868 F.2d 69 (3d. Cir. 1983). . . . . . . . . (12)

<u>Blum v. Schlegel</u>, 830 F.Supp. 712 (W.D.N.Y. 1993). .(13, 17, 18, 19)

<u>Cornelius v. NAACP Legal Defense and Educational Fund, Inc.</u>, 473 U.S. 788, 797 (1985). . . . . . . . . . . . . . (14, 15, 16, 21)

<u>Greer v. Spock</u>, 424 U.S. 828, 838 (1976). . . . . . . . . (16)

<u>People For The Ethical Treatment Of Animals v. Giuliani, NYC</u>, 105 F.Supp.2d 294 (S.D.N.Y. 2000). . . . . . . . . .(20, 21, 22)

<u>Berrios v. New York City Housing Auth.</u>, 564 F.3d 130, 132 (2d Cir. 2009). . . . . . . . . . . . . . . . . . . . (23, 24)

<u>Quinones v. Quinones</u>, 57 N.Y.S.2d 371(Sup. Ct. 1945). . . . (25)

<u>Carballeira v. Shumway</u>, 273 A.D.2d 753(3rd Dept. 2000). . . . .(25)

<u>Neilson v. Colgate-Palmolive Co.</u>, 199 F.3d 642(2d Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . (26)

<u>Kerr v. Clampitt</u>, 95 U.S. 188 (1877). . . . . . . . . . . (27)

<u>Weaver v. Indymac Federal Bank</u>, 2012 WL 5870791(C.A.2(N.Y.))(27)

<u>Statutes</u>

**42 U.S.C. § 1983**. . . . . . . . . . . . . . . . . . . . . .(7)

**28 U.S.C. § 1654**. . . . . . . . . . . . . . . . . . . . (23, 24)

## <u>PRELIMINARY STATEMENT</u>

This action was commenced by Plaintiff-Appellant, Ben Gary Treistman (hereinafter "Treistman") in the United States District Court for the Northern District of New York on January 02, 2013. The Defendants-Appellees Jillian Jackson, Esq., Elisabeth Krisjanis, Esq., Joseph Bennett, Charlene Boswell, Amy Greene, Mary Ellen Schneider, Barbara Sorking, Kelly Whittaker, Denise Woltman and Ulster County Municipality (hereinafter collectively referred to as "defendants") filed their answer to the complaint on January 15, 2013.

On February 04, 2013, the Plaintiff-Appellant made a motion by an order to show cause to the United States District Court for the Northern District of New York. The Plaintiff-Appellant's motion was for a preliminary injunction and a temporary restraining order, which would prohibit the defendants from restricting him from speaking about certain matters with his daughter during the court-ordered supervised visitations. The defendants submitted opposition papers to the plaintiffs request for a preliminary injunction and order to show cause on February 20, 2013.

On May 02, 2013, the United States District Court for the Northern District of New York issued a summary order requiring Cynthia Feathers, Esq. to move for admission *pro hac vice* and serve as the guardian ad litem for Plaintiff's daughter, Anya Treistman (hereinafter "A.T."). On June 04, 2013, pursuant to the direction

3

of the court, Cynthia Feathers, Esq. submitted a report to the court detailing the best interests of A.T. in regards to being named a plaintiff in the current action.

Honorable Gary L. Sharpe of the United States District Court for the Northern District of New York issued a summary order on June 05, 2013.  Judge Sharpe, in his summary order, denied Plaintiff-Appellants request for a preliminary injunction and temporary restraining order as well as dismissed all claims on behalf of A.T. and terminated her as a plaintiff in the case. Plaintiff-Appellant, thereafter filed a motion for reconsideration on June 28, 2013.  The motion for reconsideration was ultimately dismissed as being filed untimely on July 09, 2013.

The Plaintiff-Appellant filed the instant appeal on August 05, 2013 on the basis that the lower court erred in both the denial of the preliminary injunction and temporary restraining order as well as dismissing A.T. from the case.  The Plaintiff-Appellant also alleges that the lower court erred in dismissing his motion for reconsideration as untimely as local rule 7.1 (g) of United States District Court for the Northern District of New York is in contrast with Rule 83(a)(1) of the Federal Rules of Civil Procedure.

4

## <u>QUESTIONS PRESENTED</u>

1.    Did the lower court abuse its discretion by denying the plaintiff pro se, Treistman's application for a preliminary injunction and temporary restraining order?

2.    Did the lower court correctly dismiss A.T. as a plaintiff in the case based upon both the report of the guardian ad litem and for the reason that Treistman does not have standing to bring a claim on behalf of his minor daughter, as he is not represented by counsel?

3.    Should this Court disregard factual allegations contained in Treistman's brief as they were neither before the lower court nor contained in the instant record on appeal?

## STATEMENT OF THE CASE

Plaintiff-Appellant, Treistman, is the father of the minor A.T.  In October of 2011, Treistman had been investigated by the Ulster County Department of Social Services (hereinafter "DSS") for charges of neglect that had been filed against him (see DKT. no. 1)[1].  Pursuant to the investigation, a neglect proceeding was brought in the Ulster County Family Court, which ultimately led to the Ulster County Family Court issuing an order only allowing him supervised visitation with A.T. at DSS for one hour a week (see DKT. no. 1).  This order was based on an agreement reached in May of 2012, where the charges would be adjourned in contemplation of dismissal with one year of supervised visits commencing on May 17, 2012 (see DKT. no. 18).

His visitations were supervised by the defendants, where there were certain ground rules in place.  Treistman, during the visitations, began to converse with his daughter, A.T., about the ongoing case and, *inter alia*, their future trips together once the court allows them to be reunited again (see DKT. no. 1).  After these conversations, A.T. informed the defendants that her father made her uncomfortable when he would speak about the ongoing legal matters and such (see DKT. no. 1).  As it was their job to advocate for the interests of A.T. and also supervise the visitations

---

[1] DKT. at all times hereinafter refers to the docket of the United States District Court for the Northern District of New York in the case of *Treistman v. Wacks*.

pursuant to the court-order, the defendants informed Treistman that he was prohibited from engaging in conversation with his daughter about certain topics during the visitations (see DKT. no. 1). Eventually, the Ulster County Family Court issued an order directing Mr. Treistman to refrain from discussing this lawsuit with his daughter (see DKT. no. 34). Pursuant to Treistman's complete disregard for the instructions, the Hon. Anthony McGinty of the Ulster County Family Court eventually suspended Treistman's visitations with his daughter completely.

The instant summons and complaint was filed in the United States District Court for the Northern District of New York on December 28, 2012, in the name of Ben Gary Treistman and his minor daughter, A.T., as plaintiffs (see DKT. no. 1). Treistman elected to proceed pro se in the instant case, and brought the case on his daughters behalf as next friend for A.T. (see DKT. no. 1). The complaint demands monetary damages under 42 U.S.C. § 1983 (see DKT. no. 1).

On February 4, 2013, Treistman moved by order to show cause to the district court for a both a preliminary injunction and a temporary restraining order (see DKT. no. 12). The relief sought by both the preliminary injunction and temporary restraining order was to order that the defendants allow Treistman to speak with his daughter about any matters he deems necessary until the lower court makes a determination on the merits in the instant litigation. On

7

May 2, 2013, the lower court directed that Cynthia Feathers, Esq. move for admission *pro hac vice* to the United States District Court for the Northern District of New York and act as guardian ad litem for A.T. concerning the instant litigation (see DKT. no. 27).

Ms. Feathers applied for admission *pro hac vice* and thereafter met with A.T. to determine what her best interests were in the instant case. She subsequently submitted a written report to the court detailing that A.T. had expressed to her that "she has no interest in the litigation, and it appears that is having a negative impact on her well being" (see DKT. no. 31); see also (RA at page 17).[2]  Pursuant to the report of Ms. Feathers as well as the facts before the lower court, Hon. Gary L. Sharpe issued a summary order on June 05, 2013 (RA at pages 15-18). The order both denied the preliminary injunction and temporary restraining order as well as terminated A.T. as a plaintiff in the case as it is not in her best interests, and Treistman is not able to bring a claim on his minor daughter's behalf without being represented by counsel (RA at pages 15-18); **see also *Cheung v. Youth Orchestra Foundation of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990).** Treistman thereafter filed a notice of appeal to this Court on August 5, 2013 seeking review of the lower court's decision to

---

[2] RA at all times hereinafter refers to "Record on Appeal" in the case of *Treistman v. Wacks*.

deny his preliminary injunction and dismiss A.T. from the case (RA at page 13).

Throughout both the State and Federal proceedings, Mr. Treistman has, apparently, lost sight of the rights of his daughter, ignoring the recommendations of court appointed guardian ad litems and Family Court judges who are not a party to this action.

**POINT I**

**THE LOWER COURT DID NOT ABUSE ITS DISCRETION IN DENYING PLAINTIFF PRO SE, TREISTMAN'S, APPLICATION FOR A PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER.**

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing*,* carries the burden of persuasion" **see *Nitke v. Ashcroft*, 253 F. Supp. 2d 587, 610 (S.D.N.Y. 2003).** In order to obtain a preliminary injunction a party, ordinarily, must show: "(a) that it will suffer irreparable harm in the absence of an injunction, and (b) either (i) a likelihood of success on the merits or (ii) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of the hardships tipping decidedly in the movant's favor" **see *Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 172 (2d Cir. 2001).**

*A. STANDARD OF REVIEW*

A district court's ruling on a preliminary injunction, whether it is a grant or denial, can be reviewed by an appellate court for an "abuse of discretion" **see *Id.* at 171.** Generally, abuse of discretion review pertains to cases where the district court is vested with discretion as to a certain matter, such as granting or denying a preliminary injunction **see *Id.* at 169-70.** When the district court is vested with discretion, the law does

10

not require it to make a particular decision; rather, it is empowered to make a decision of its choosing, so long as it falls within a range of permissible decisions **see *Id*. at 170**. To find that the district court either abused or exceeded the discretion accorded to it, the appellate court must find that "(1) its decision rests on an error of law or a clearly erroneous factual finding, or (2) its decision, though not necessarily the product of a legal error or a clearly erroneous factual finding, cannot be located with the range of permissible decisions" **see *Id*.** Furthermore, in a case where the injunction sought will alter rather than maintain the status quo; the movant maintains a higher standard of proof **see *Dunkin Donuts Inc. v. National Donut Restaurants of New York, Inc.*, 291 F.Supp. 2d 149, 151 (E.D.N.Y. 2003).** The movant must show a "clear or substantial likelihood of success" **see *Id*.**

In the present case, plaintiff pro se, Treistman, was seeking both a preliminary injunction and a temporary restraining order from the lower court (RA at page 25). Treistman alleged that, during his court-ordered supervised visitations with his daughter, A.T., he was prohibited from speaking about his pending case, and, *inter alia*, other legal matters, which constituted a violation of his First Amendment freedom of speech rights (RA at pages 21-23). The lower court, in its decision and order, denied both the temporary restraining order and the preliminary injunction

11

requested by Treistman (RA at pages 16-17).  As the law does not require the district court to rule one way or another, the denial of the preliminary injunction was within the range of permissible decisions that the district court has been granted the discretion to make **see *Zervos*, Supra at 170**.  As such, this Court can review whether the lower court abused its discretion in denying the preliminary injunction.  Absent a finding that either "(1) its decision rests on an error of law or a clearly erroneous factual finding, or (2) its decision, though not necessarily the product of a legal error or a clearly erroneous factual finding, cannot be located with the range of permissible decisions," it should uphold the decision **see *Id*.**  Further, the relief requested, in the present case, was to prohibit the defendants from curtailing the topics Treistman and his daughter are able to speak about during the visitations (RA at page 25).  As such, Treistman is requesting to alter the status quo and is required to show a "clear or substantial likelihood of success" **see *Dunkin Donuts*, Supra at 151**.

**B.  IRREPERABLE INJURY**

In his brief to this Court, the plaintiff pro se, Treistman, cites ***Hohe v. Casey*, 868 F.2d 69 (3d. Cir. 1983)** by stating that his allegation of a First Amendment violation unquestionably constitutes irreparable injury.  Treistman states that the allegation, in and of itself, satisfies the irreparable injury

12

requirement for a preliminary injunction. As this Court is aware, the Federal Courts have routinely held that the loss of First Amendment freedoms for even minimal periods of time constitute irreparable injury **see *Blum v. Schlegel*, 830 F.Supp. 712, 723 (W.D.N.Y. 1993).** However, when a plaintiff alleges that his First Amendment rights are violated, but it turns out that the allegations only support an indirect violation, there still must be a showing of irreparable harm **see *Id*.**

In the present case, Treistman alleges that his First Amendment rights were violated when he was restrained by the defendants from speaking about certain topics with his daughter during the court-ordered supervised visitations (RA at pages 21-24). In particular, the plaintiff pro se seeks a temporary restraining order and preliminary injunction prohibiting defendants "from interfering with, obstructing, coercing against, sanctioning against, penalizing, or preventing the [plaintiffs] from discussion and free conversation of their pending or future court matters" (RA at page 25). In his brief, Treistman alleges that the lower court erred in its conclusion, as the "complaint clearly pertain[s] to rights violated prior to supervised visitation (and in fact led to it being supervised), include some of the time during supervised visitation, and most significantly concerns preventative injunction against the defendants for future interference of association and speech where supervision is not a

13

factor." However, the defendant's line of reasoning is off the mark as the complaint only pertains to certain events, which led up to a family court proceeding directing supervised visitations, and events during the course of the court-ordered supervised visits (see DKT. no. 1)

Before determining whether the violation of the First Amendment had a direct or an indirect effect on Treistman, we must address the issue of whether the prohibition of speaking about certain topics, that the defendant's deemed harmful towards A.T., constitutes a First Amendment Violation **see *Cornelius v. NAACP Legal Defense and Educational Fund, Inc.*, 473 U.S. 788, 797 (1985).** "Nothing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities" **see *Id*. at 799-800.** Further, the Government, no different than a private property owner, has the power to preserve the property under its control for the use to which it is lawfully dedicated **see *Id*.** In recognition of the above, the Court has adopted a forum analysis "as a means of determining when the Government's interest in limiting the use of its property to its intended purpose outweighs the interest of those wishing to use the property for other purposes" **see *Id*. at 800.** Therefore, the extent to which the Government can control access depends on the

14

nature of the relevant forum, i.e., whether it is considered a public or a nonpublic forum **see *Id*.**  The Court has made it clear that if it is considered a nonpublic forum, access can be restricted as long as the restrictions are "reasonable and are not an effort to suppress expression merely because public officials oppose the speaker's view" **see *Id*.**  In the present case, it is undisputed that the alleged conduct and the discussions about the prohibition of the same occurred within the Ulster County Department of Social Services during court-ordered supervised visitations.  Therefore, the relevant forum for the First Amendment analysis is the Ulster County Department of Social Services.

As forum analysis is not completed merely by identifying the government property at issue, the next step is to determine whether the particular forum, Ulster County Department of Social Services, is considered a public or a nonpublic forum **see *Id*. at 801-02.**  A traditional public forum is a place that "by long tradition or by government fiat has been devoted to assembly and debate," i.e., public streets and parks **see *Id*. at 802.**  However, there must be a clear intent to create a public forum by the government as "the First Amendment does not guarantee access to property simply because it is owned or controlled by the government" **see *Id*. at 802-03.**

In ***Cornelius*, Supra,** the Supreme Court eventually held that the property in question was deemed to be a nonpublic forum.  In

making this determination, the Court cited to **Greer v. Spock**, **424 U.S. 828, 838 (1976)**, which stated that "[T]he business of a military installation [is] to train soldiers, not to provide a public forum" **see Cornelius**, **Supra at 805**. The Court finally concluded that the Government has the right to exercise control over access to the federal workplace in order to avoid interruptions to the performance of the duties of its employees **see Id. at 805-06**. In the present case, the intent of the government in establishing the Department of Social Services was not to create a public forum. As a military installation is to train soldiers, the Department of Social Services functions as a place of business for government employees, not a public forum **see Id. at 805**. As such, the Department can limit speech in the forum so long as the restrictions are "reasonable and are not an effort to suppress expression merely because public officials oppose the speaker's view" **see Id. at 800**.

Here, the complaint makes it abundantly clear that pursuant to the court-order, Treistman was only allowed to have supervised visitations with his daughter (see DKT. no. 1). These visitations were scheduled to, and in fact did, take place at the visitation room of the Ulster County Department of Social Services (see DKT. no. 1). Treistman was both accused and observed talking to his daughter about matters that the defendants found were inappropriate and not in the best interests of his daughter, such

16

as the instant case and other ongoing legal matters (see DKT. no. 1).   The defendants, pursuant to their authority under both the court-order and their duties as caseworkers for the Ulster County Department of Social Services, informed Treistman that he was not allowed to engage in such conversations with his daughter (see DKT. no. 1).   These prohibitions were reasonable as they only pertained to certain topics of conversation that Treistman was having with his daughter that the defendants deemed to be harmful to her and in violation of the court-order.   Further, this was not an effort to suppress expression merely because the defendants oppose Treistman's views, as he was completely prohibited from engaging in conversations about the legal matters, whether the defendants agreed with his assertions or not.   Based upon the above mentioned case law, there were no First Amendment violations in the complaint, and as such the Court should not infer irreparable injury based upon the alleged First Amendment violation **see *Blum*, Supra at 723.**   At the very most the Court could view this as an indirect violation of Treistman's First Amendment rights, where he would then be required to show irreparable harm **see *Id*.**

   In the event this Court does find that there was an indirect violation of Treistman's First Amendment rights; Treistman will still not be able to show irreparable harm.   The second stage of the analysis turns to a question of whether there has been a "chilling" of free speech, as this would constitute irreparable

17

harm **see *Id*. at 723-24.** The chilling effect must amount to "a clearcut infringement of First Amendment rights which, absent preliminary injunctive relief, either has occurred or will occur in the future" **see *Id*. at 724.** In order for Treistman to obtain the preliminary injunction, he must show that the chilling of the right to speak will be "thawed by the entry of an interim injunction, since the theoretical chilling of protected speech…stems not from the interim discharge, but from the threat of permanent discharge, which is not vitiated by an interim injunction" **see *Id*.**

In the present case, as in ***Blum*, Supra,** the plaintiff has failed to allege that there was a chilling of the right to speak or that the issuance of an injunction would thaw that chill **see *Id*.** As stated above, Treistman's allegations arise from incidents where the defendants informed him that he cannot speak to his daughter about certain prohibited topics during his court-ordered supervised visitations, which were also noted in the decision of Judge Gary Sharpe (RA at pages 16-17 [stating his underlying claims, which pertain mostly to his allegations that defendants violated his rights in relation to his communication with A.T. during supervised visitation]). As the prohibitions by the defendants were reasonable and would not be considered a First Amendment violation, there is no chilling effect present and therefore, no irreparable harm **see *Id*. at 723-24.** Further, if

18

this Court does find that there is a "chilling effect" it cannot be "thawed" by a preliminary injunction, as the Family Court has since banned any visitation between Treistman and his daughter based on his non-compliance with the court-order, and therefore, his complaints are moot **see *Id*. at 724.**

As the standard of review for a preliminary injunction is abuse of discretion review, this Court should only overturn the decision of the lower court if it finds that the decision rests on an error of law or a clearly erroneous factual finding, or its decision cannot be located within the range of permissible decisions **see *Zervos*, Supra at 170.** The lower court did not clearly address the issue of irreparable harm, as it found that there was no likelihood of success on the merits and did not need to address the latter; however, it would have also found that there was no irreparable harm. The lower court had the discretion to either grant or deny the preliminary injunction and therefore, the denial was within the range of permissible decisions. Further, the decision was not based on an error of law as there was no First Amendment Violation, so it logically follows that there also could not be a "chilling" effect on Treistman's First Amendment rights. Therefore, this Court should uphold the decision of the lower court as it did not abuse its discretion in denying the preliminary injunction and temporary restraining order as there was no irreparable harm.

19

## C. *LIKELIHOOD OF SUCCESS ON THE MERITS*

If this Court finds that there in fact was irreparable harm, it should still deny the appeal as the lower court was correct in determining that Treistman "has not shown a likelihood of success on the merits of his underlying claims" (RA at page 16). As stated above, the Court in ***Dunkin Donuts*, Supra,** made it clear that when the party seeking the preliminary injunction is seeking to alter the status quo there is a heightened burden of proof. The movant seeking to alter the status quo, as Treistman is in this case, must show a "clear or substantial likelihood of success on the merits" **see *Dunkin Donuts*, Supra at 151.**

In ***People For The Ethical Treatment Of Animals v. Giuliani, NYC*, 105 F.Supp.2d 294 (S.D.N.Y. 2000),** the United States District Court for the Southern District of New York analyzed the issue of establishing likelihood of success on the merits in the case of a preliminary injunction. The court noted that, the movant, in a First Amendment case where he is seeking a mandatory injunction must show a "substantial likelihood of success on the merits" **see *People*, Supra at 304.** Further, the Court in ***People*,** stated that to show a substantial likelihood of success on the merits it must evaluate the claims in light of the applicable First Amendment doctrine **see *Id*.**

As stated above, the extent to which the Government can control access depends on the nature of the relevant forum, i.e.,

whether it is considered a public or a nonpublic forum **see *Cornelius*, Supra at 800.** In this case, it is undisputed that the relevant forum, for First Amendment purposes, is the Ulster County Department of Social Services. It was further stated above that the Ulster County Department of Social Services is considered a nonpublic forum and therefore, speech can be restricted in the forum as long as the restrictions are "reasonable and are not an effort to suppress expression merely because public officials oppose the speaker's view" **see *Id*.** Further, following the logic above, the restrictions on certain topics of conversation that Treistman could not speak about were reasonable and, therefore, not a First Amendment violation.

Judge Gary Sharpe, in his summary order, made it clear that Treistman has particularly not shown a likelihood of success on the merits, as his claims rely on allegations that the defendants violated his rights in relations to communication with his daughter during supervised visitation (RA at pages 16-17). Judge Sharpe made his decision based on the foregoing and found that, as Treistman will not be able to succeed on a First Amendment claim, it follows that he has not shown a substantial likelihood of success on the merits **see *People*, Supra at 304.**

To reiterate, the standard of review for a preliminary injunction is abuse of discretion review, as such, this Court should only overturn the decision of the lower court if it finds

21

that the decision rests on an error of law or a clearly erroneous factual finding, or its decision cannot be located within the range of permissible decisions **see *Zervos*, Supra at 170.**  As the applicable First Amendment law shows that, in this case, a violation of the First Amendment is at the very most suspect, and therefore, the lower court did not rest its decision on an error of law or fact in finding that Treistman could not show a substantial likelihood of success on the merits.  Further, as stated above, there were two permissible decisions that the lower court could have made in this case, to grant or deny the preliminary injunction.  As such, the denial of both the preliminary injunction and the temporary restraining order were not an abuse of discretion and, therefore, this Court should uphold the decision of the lower court (RA at page 17); **see also *Zervos*, Supra at 170.**

## POINT II

**THE LOWER COURT CORRECTLY DISMISSED A.T. AS A PLAINTIFF IN THE CASE BASED UPON BOTH THE REPORT OF THE GUARDIAN AD LITEM AND THAT TREISTMAN DOES NOT HAVE STANDING TO BRING A CLAIM ON BEHALF OF HIS MINOR DAUGHTER.**

It is well settled that, in the federal courts, a party has the authority to plead and conduct their own case either personally or through counsel **see *Berrios v. New York City Housing Auth.*, 564 F.3d 130, 132 (2d Cir. 2009); see also 28 U.S.C. § 1654.** Pursuant to section 1654, a party has the right to proceed *pro se* with respect to any of his or her own claims, however, "the statute does not permit unlicensed laymen to represent anyone else other than themselves" **see *Id.*** The Court in ***Berrios***, **Supra**, went on to state that the reasons for requiring that a party, unless representing himself, must be represented by an attorney are mainly that litigation by a non-attorney generally will create "unusual burdens for his adversaries and the court, as well as for the party he would represent" **see *Berrios*, Supra at 133.** Further, a lay litigant "frequently brings pleadings that are awkwardly drafted, motions that are inarticulately presented, and proceedings that are needlessly multiplicative" **see *Id.***

In a case more directly on point, the Second Circuit Court of Appeals for the United State District Court in ***Cheung,* Supra**, addressed the issue of a father bringing suit on behalf of his minor child. This Court, in ***Cheung*, Supra**, held that "a father

was not allowed to bring suit on behalf of his minor daughter without representation by counsel **see _Id._ at 61.** "There is nothing in the guardian-minor relationship that suggests that the minor's interests would be furthered by representation by the non-attorney guardian" **see _Id._** A non-attorney has no authority to appear on behalf of others **see 28 U.S.C. § 1654.**

In the present case, Treistman is attempting to do what this Court has directly held against, bring an action on behalf of his minor daughter without being represented by counsel. The lower court, in its summary order, issued an order both dismissing all claims on behalf of A.T., and also terminating A.T. as a plaintiff in the case (RA at pages 16 and 17). It is respectfully submitted that, as Treistman is not represented by counsel, he does not have standing to bring a claim on behalf of his minor daughter and this Court should uphold the decision of the lower court pursuant to the rulings in **_Berrios_**, **Supra** and **_Cheung_**, **Supra.**

Notwithstanding the fact that Treistman does not have the authority to bring a claim on behalf of his minor daughter, the lower court appropriately appointed Cynthia Feathers, Esq., as the guardian ad litem for A.T. (see DKT. no. 27). It has been well established that the duties of a guardian ad litem require her to acquaint herself with all the rights of the infant in order to protect her **see _Quinones v. Quinones_, 57 N.Y.S.2d 371, 372 (Sup. Ct. 1945).** The guardian ad litem is tasked with gathering the

24

pertinent facts and preparing a report, which sets forth the facts
and any suggestions that the guardian may have for the court and
submitting the same to the court **see *Id*.** However, the functions
of the guardian are purely ministerial and she should "submit to
the court for its consideration and decision every question
involving the rights of the infant affected by the suit" **see *Id*.
at 372-73.** Further, the guardian ad litem has the responsibility
to represent the child's wishes as well as advocate for the best
interests of the child **see *Carballeira v. Shumway*, 273 A.D.2d 753,
755 (3ʳᵈ Dept. 2000).**

     In the present case, the lower court, in a summary order,
directed that Cynthia Feathers, Esq. be appointed as guardian ad
litem for the minor child A.T. (see DKT. no 27). Pursuant to her
duties as guardian ad litem for A.T., Ms. Feathers spent time with
A.T. and gathered information for a report that she submitted to
the court on whether it was in the best interests of A.T. to be
involved in the present litigation (see DKT no. 27). Judge Gary
Sharpe, in his summary order, made it clear that the court reviewed
the report of Ms. Feathers in coming to its determination (RA at
page 16). Further, Judge Sharpe stated that A.T. informed Ms.
Feathers that "she has no interest in the litigation" and it also
appeared to both Judge Sharpe and Ms. Feathers that the current
litigation is having a negative impact on her well being (RA at
page 17). Both Judge Sharpe and Ms. Feathers also agreed that

A.T. "does not have an interest that she needs to protect via such application," i.e., a preliminary injunction or temporary restraining order (RA at page 16).  In reviewing the report of the guardian ad litem, the court had the discretion to choose to approve or not to approve the guardian's recommendations **see *Neilson v. Colgate-Palmolive Co.*, 199 F.3d 642, 652 (2d Cir. 1999).** It is respectfully submitted that this Court should uphold the ruling of the court below as it read the report of the guardian ad litem and chose to accept her recommendations by dismissing A.T. from the case.

## POINT III

**THE PLAINTIFF-APPELLANT, TREISTMAN'S, BRIEF ON APPEAL IS REPLETE WITH MULTIPLE FACTUAL ALLEGATIONS THAT ARE NEITHER CONTAINED IN THE RECORD ON APPEAL NOR WERE PRESENTED TO THE LOWER COURT FOR REVIEW AND SHOULD BE DISREGARDED.**

It has been a long settled law that, on appeal, the appellate court cannot consider facts that are not present in the record on appeal **see *Kerr v. Clampitt*, 95 U.S. 188 (1877); see also *Weaver v. Indymac Federal Bank*, 2012 WL 5870791 (C.A. 2 (N.Y.)) (denying the order to supplement the record and stating that generally the Court does not consider materials on appeal that were not before the district Court).** In *Kerr*, **Supra***, the Supreme Court made it clear that it is not allowed to consider any documents that were not before the inferior court for review; and if error is not disclosed by the record, the judgment of the lower court must be affirmed **see *Kerr*, Supra at 190.**

In the present case, Treistman's brief is replete with factual allegations that were neither presented to the lower court for review nor contained in the instant record on appeal. Pursuant to the long settled law, this Court should disregard any factual allegations presented in Treistman's brief that were neither before the lower court nor contained in the instant record on appeal.

27

## CONCLUSION

Plaintiff-Appellant cannot establish either element required to receive a preliminary injunction or temporary restraining order. Plaintiff-Appellant, Treistman, attempts to discredit the report of A.T.'s guardian ad litem, Cynthia Feathers, Esq., as Treistman claims that he wrote to her and she refused to consult with him in making her decisions. He further attempts to place blame on the defendants for their roles in following the order of the Ulster County Family Court by prohibiting Treistman from engaging in conversations with his daughter, A.T., that were deemed harmful. As employees for the Ulster County Department of Social Services, the defendants were tasked with supervising the visitations between A.T. and her father, Treistman. After the Ulster County Family Court issued an order for supervised visitations, the defendants, pursuant to their legal authority, monitored the visitations between Treistman and A.T. There is absolutely no proof that the defendants acted outside of their authority granted by the Ulster County Family Court, and further there is no indication of any injury to the plaintiff pro se by not allowing him to speak to his daughter about topics that were deemed harmful to her. In view of the foregoing, Defendants-Appellees respectfully submit that Plaintiff-Appellant's motion for a preliminary injunction, temporary restraining order, and

motion for reconsideration were properly denied by the District Court.

Respectfully submitted,


  s/Eric M. Kurtz
ERIC M. KURTZ, ESQ. (103869)
COOK, NETTER, CLOONAN, KURTZ &
MURPHY, P.C.
ATTORNEYS FOR DEFENDANTS-APPELLEES
85 MAIN STREET, P.O. BOX 3939
KINGSTON, NEW YORK 12402
(845) 331-0702

**ADDENDUM**

**i**

## TABLE OF CONTENTS

**Page**

Opinion in *Weaver v. Indymac Federal Bank, FSB*,
    488 Fed. Appx. 522 (2012).....................................  ADD-1

Opinion in *Kerr v. Clampitt*, 95 U.S.188 (1877) .......  ADD-3



**ADD-1**

Weaver v. Indymac Federal Bank, FSB, 488 Fed.Appx. 522 (2012)

488 Fed.Appx. 522

This case was not selected for
publication in the Federal Reporter.
United States Court of Appeals,
Second Circuit.

Everette WEAVER, Plaintiff-Appellant,

v.

INDYMAC FEDERAL BANK, FSB, now
known as One West Bank, FSB, f/k/a
Indymac Bank, FSB, Defendant-Appellee,
Houlihan Lawrence Real Estate, Inc., John
Oliveira, Defendants-Cross Defendants-Appellees,
Joan Davies, Defendant-Cross
Claimant-Cross Defendant Appellee,
Clove Branch Road, LLC, Kevin P. Barry,
Attorney at Law, Defendants-Cross
Defendants-Cross Claimants-Appellees.

No. 11-4652.  |  Nov. 21, 2012.

Appeal from a judgment and order of the United States
District Court for the Southern District of New York (Owen,
J.).

**Attorneys and Law Firms**

Everette    Weaver,    Hopewell    Junction,    NY,
Plaintiff-**Appellant** pro se.

Scott Kossove, L'Abbate, Balkan, Colavita & Contini,
L.L.P., Garden City, NY, for defendants-appellees, Houlihan
Lawrence Real Estate, Inc., John Oliveira.

Glenn Alan Kaminska, Ahmuty, Demers & McManus,
Albertson, NY, for defendant-appellee Joan Davies.

Kevin Dennehy Slakas, New York, NY, for defendant-
appellee. Clove Branch Road, LLC.

Michael Paul Kancler, Callan, Koster, Brady & Brennan,
LLP, New York, NY, for defendant-appellee Kevin P. Barry.

No appearance for defendant-appellee Indymac Federal
Bank, FSB, Now Known As One West Bank, FSB, f/k/a
Indymac Bank, FSB.

Present:    JOHN M. WALKER, JR., ROBERT A.
KATZMANN, DEBRA ANN LIVINGSTON, Circuit
Judges.

**Opinion**

**SUMMARY ORDER**

**UPON DUE CONSIDERATION, IT IS HEREBY
ORDERED, ADJUDGED, AND DECREED** that the
judgment and order of the district court is **AFFIRMED.**

**Appellant** Everette Weaver, proceeding *pro se,* appeals from
the district court's orders (1) granting several defendants'
motions to dismiss or for judgment on the pleadings pursuant
to Federal Rules of Civil Procedure 12(b)(6) and 12(c); (2)
dismissing his claims against Indymac Federal Bank, FSB
for lack of subject matter jurisdiction; and (3) directing the
district court clerk to "terminate" his motion to amend his first
amended complaint based on Weaver's failure to comply with
the court's individual practice rules. Weaver also moves to
supplement the **record** on appeal, and for the Court to take
judicial notice of certain documents. We assume the parties'
familiarity with the underlying **\*523 facts,** the procedural
history of the case, and the issues on appeal.

This Court **reviews** *de novo* a district court's grant of a Rule
12(b)(6) motion to dismiss, "accepting all factual allegations
[in the complaint] as true and drawing all reasonable
inferences in favor of the plaintiff." *Litwin v. Blackstone Grp.,
L.P.,* 634 F.3d 706, 715 (2d Cir.2011). We **review** the grant
of a Rule 12(c) motion for judgment on the pleadings under
the same **standard.** *See Bank of N.Y. v. First Millennium,
Inc.,* 607 F.3d 905, 922 (2d Cir.2010). A district court's
dismissal of a claim for lack of subject matter jurisdiction is
also **reviewed** *de novo. See Norex Petroleum Ltd. v. Access
Indus., Inc.* 631 F.3d 29, 32 (2d Cir.2010) (per curiam).

Weaver has forfeited any challenge to the district court's
dismissal of his amended complaint, as he does **not** address in
his **appellate brief** any of the issues addressed by the district
court, and, instead, merely reiterates his factual allegations
and raises new claims. *See LoSacco v. City of Middletown,*
71 F.3d 88, 92–93 (2d Cir.1995) (holding, in the context
of a *pro se* appeal, that issues **not** raised in an **appellate
brief** are abandoned); *see also Tolbert v. Queens Coll.,* 242
F.3d 58, 75 (2d Cir.2001) ("It is a settled **appellate** rule that
issues adverted to in a perfunctory manner, unaccompanied
by some effort at developed argumentation, are deemed
waived." (internal quotation marks omitted)). In any event,
an independent **review** of the **record** and relevant case law
and statutory provisions reveals that the district court properly

Weaver v. Indymac Federal Bank, FSB, 488 Fed.Appx. 522 (2012)

adopted the magistrate judge's recommendations to dismiss Weaver's claims, and, thus, we affirm the district court's judgment for substantially the same reasons stated by the magistrate judge in her thorough June 2010 and February 2011 reports and recommendations.

With respect to Weaver's motion for leave to amend his amended complaint, this Court **reviews** the denial of a motion to amend, which was the practical effect of the district court's termination of his motion, for abuse of discretion. *See Spiegel v. Schulmann*, 604 F.3d 72, 78 (2d Cir.2010). We conclude that the district court did **not** abuse its discretion in terminating Weaver's motion to amend, especially since he provided no explanation as to why he was unable to raise those claims earlier. Furthermore, a **review** of Weaver's proposed claims reflects that they are essentially recharacterizations of the claims in his first amended complaint, and, thus, would suffer from the same defects as those claims. *See Beilikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir.2007) ("Leave to amend is

especially inappropriate where ... proposed amendments [are] merely recycled versions of claims which ha[ve] already fallen victim to a motion to dismiss."). Thus, we also affirm the district court's order terminating Weaver's motion to amend.

We have considered all of Weaver's arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment and order of the district court. It is further **ORDERED** that Weaver's motion to supplement the **record** and for this Court to take judicial notice is **DENIED**, as we generally do **not** consider materials on appeal that were **not** before the district court, *see Int'l Bus. Machs. Corp. v. Edelstein*, 526 F.2d 37, 45 (2d Cir.1975), and do **not** find that extraordinary circumstances warranting the **review** of such materials exist in this case.

**Parallel Citations**

2012 WL 5870791 (C.A.2 (N.Y.))

**End of Document**

© 2014 Thomson Reuters. No claim to original U.S. Government Works.

Kerr v. Clampitt, 95 U.S. 188 (1877)
5 Otto 188, 24 L.Ed. 493

95 U.S. 188
Supreme Court of the United States

KERR
v.
CLAMPITT.

October Term, 1877

**Opinion**

ERROR to the Supreme Court of the Territory of Utah.

The **record** in this case shows that several issues of **fact** regularly made up were tried by a jury in the third judicial district court of the Territory of Utah, that a verdict was returned in favor of the defendants in error for $3,583, and a judgment rendered thereon, Nov. 11, 1874; but it does **not** show that any exceptions were taken to the rulings of the court, either admitting or rejecting evidence, or to instructions given or to those refused, nor does it **contain** any thing purporting to be a bill of exceptions.

It shows, however, that a motion for a new trial was made on that day, and that a 'statement or motion for a new trial' was also filed on the 20th of March, 1875. At the foot of the statement is the following agreement, signed by attorneys for both parties: 'It is hereby agreed that the foregoing shall constitute the statement on motion for a new trial in the above-entitled cause, and is correct.' Indorsed on the statement is the following: 'Settled statement on new trial, filed March 20, 1875.'

This statement purports to give certain rulings of the court upon the admission and rejection of evidence and upon instructions to the jury given and refused, and exceptions which, it is said, were taken; but, by express agreement of the parties by their attorneys, the use of the statement is limited to the hearing of the motion for a new trial.

The **record** also shows that defendants below gave notice of *189 an appeal to the Supreme Court of the Territory from the judgment entered on the verdict, as well as from that of the 1st of May, 1875, overruling the motion for new trial; and the bond recites an appeal from both judgments.

West Headnotes (4)

[1]    **Federal Courts**

     Presentation of Questions Below or on Review; Record; Waiver

This court must have before it a bill of exceptions, or what is equivalent thereto, upon which the final judgment of the court below was reviewed by the intermediate court, or it will **not** examine into any alleged errors, except such as are otherwise apparent on the face of the **record**.

5 Cases that cite this headnote

[2]    **Federal Courts**

     Presentation of Questions Below or on Review; Record; Waiver

The **appellate court** can **consider** nothing that is **not contained** in the **record**, and will **not** pass on a question **not** raised by the **record**.

[3]    **Federal Courts**

     Scope and Extent of Review

A final judgment of an inferior court cannot be examined through its rulings upon the motion for a new trial.

5 Cases that cite this headnote

[4]    **Federal Courts**

     New Trial, Rehearing, or Reconsideration

The denial of a motion for a new trial being within the discretion of the trial court is **not** reviewable.

10 Cases that cite this headnote

**Attorneys and Law Firms**

*Mr. Samuel Shellabarger* and *Mr. Jeremiah M. Wilson* for the plaintiff in error.

*Mr. S. S. Henkle, contra.*

@1. This court has no jurisdiction to revise the action of an inferior court upon the question of either granting or refusing a new trial, and the final judgment of such court cannot be examined through its rulings upon that question. If, when the final judgment is brought here for review by writ of error,

**Kerr v. Clampitt, 95 U.S. 188 (1877)**

5 Otto 188, 24 L.Ed. 493

no other documents are presented for consideration than such as were before the inferior court upon the application for a new trial, this court cannot look into them; and, if error is **not** otherwise disclosed by the **record**, the judgment will be affirmed.

@2. This court must have before it a bill of exceptions, or what is equivalent thereto, upon which the final judgment of the court below is reviewed, or it will **not** examine into any alleged errors, except such as are otherwise apparent on the face of the **record**.

MR. JUSTICE FIELD delivered the opinion of the court.

By the system of procedure in civil cases adopted in Utah, an appeal lies to its Supreme Court from an order of its District Courts granting or refusing a new trial, as well as from a final judgment. The statute enumerates the grounds upon which the verdict of a jury, or the finding of a court or a referee, may be set aside, and a new trial had upon the application of the party aggrieved, and provides the mode in which such grounds shall be presented to the court. If the new trial be asked for irregularity in the proceedings of the court, jury, or adverse party, or for abuse of discretion by which either party was prevented from having a fair trial, or for misconduct of the jury, or accident or surprise which ordinary prudence could **not** have guarded against, or for newly discovered evidence, the application must be made upon affidavits. If the new trial be asked for excessive damages, or insufficiency of the evidence to justify the verdict or other decision, or that it is against law, or for errors occurring at the trial, the application must be made upon a statement of the case, setting forth so much of the proceedings had, evidence given or offered, and rulings of the court, as will distinctly present the grounds urged in its support. But whether the application be made upon affidavits, or a statement thus prepared, the rulings thereon, whether of the District Court originally, or of the Supreme Court of the Territory on appeal, are **not** subject to review by this tribunal. We have no jurisdiction to revise the action of an inferior court upon the question of granting or refusing a new trial, however meritorious

the grounds presented for its consideration or erroneous its decision. The final judgment cannot be examined through the rulings of the lower court upon that question. If, therefore, when the final judgment is brought before *190 us for review by writ of error, no other documents are presented for our consideration than such as were before the inferior court upon the application for a new trial, we cannot look into them; and, if error is **not** otherwise disclosed by the **record**, the judgment must be affirmed. And such is the condition of the case at bar. No question was before the District Court or the Supreme Court of the Territory, except such as arose on the application for a new trial.

The statute of Utah also provides the mode in which the final judgments of its district courts may be reviewed. It requires a statement of the errors alleged upon which the appellant relies, with so much of the evidence as may be necessary to explain them. Compiled Laws of Utah of 1876, sects. 1413, 1550, and 1555. This statement is only another name for a bill of exceptions, and is subject to similar rules. It will often embody substantially the same matters which are presented on a motion for a new trial, and it is **not** uncommon for counsel to stipulate that the statement on the motion shall be treated as a statement or bill of exceptions on appeal from the judgment. But, unless it is so stipulated, the statement intended for the motion cannot be used on appeal from the judgment, or **considered** here. We must have before us a bill of exceptions, or what is equivalent to such bill, upon which the final judgment below was reviewed by the Supreme Court of the Territory, or we cannot examine into any alleged errors except such as are otherwise apparent on the face of the **record**. The statement in the present case **not** being one into which we can look, there is no error presented upon which we can pass. *Sparrow* v. *Strong*, 4 Wall. 584; *Cusgrave* v. *Howland*, 24 Cal. 457; *Carpenter* v. *Williamson*, 25 id. 154.

*Judgment affirmed.*

**Parallel Citations**

5 Otto 188, 1877 WL 18537 (U.S.Utah), 24 L.Ed. 493

© 2014 Thomson Reuters. No claim to original U.S. Government Works.